UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

CASE NO. 3:13-bk-06908-JAF

Mills M. Brinson, III
and Mona G. Brinson,

                Debtors..
_____/

## AMENDED NOTICE OF INTENTION TO SELL PROPERTY OF THE ESTATE

### NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within 21 days from the date of service of this paper. If you object to the relief requested in this paper, you must file your objection with the Clerk of the Court at 300 North Hogan St., Suite 3-350, Jacksonville, FL 32202, and serve a copy on the movant or movant's attorney, Robert Altman, P.O. Box 922, Palatka, FL 32178-0922.

    If you file and serve an objection within the time permitted, the court will schedule a hearing and you be notified. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the granting of the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

**AMENDED NOTICE IS HEREBY GIVEN** that the trustee intends to sell the following property, under the terms and conditions set forth below.

1. Description of property:

    Bankruptcy estate's interest in the following property:

    Real property situate in Marion County, Florida more particularly described as follows:

    The South 50.18 feet of the West 84.78 feet of Lot 3, Block 55, Old Survey of Ocala, Florida, according to the map or plat thereof as recorded in Plat Book E, Pages 1 and 2, Public Records of Marion County, Florida.
    Commence 17.00 feet West of the Southeast corner of Lot 3, Block 55, thence run North 50.18 feet, West 17.22 feet, South 50.18 feet and East 17.22 feet to the Point of Beginning, Old Survey of Ocala, Florida, according to the map or plat thereof as recorded in Plat Book E, Pages 1 and 2, Public Records of Marion County, Florida.

    The property appraiser values the property at $185,152.00 and the bankruptcy estate's interest is one-half, which is being sold as is, where is, and subject to all matters of record.

2. Manner of Sale: Private (x)* Public Auction ( )

3. Terms of Sale:

> The previously filed Notice of Intent to Sell (Doc. No. 17) contained a scrivener's error in the purchase price. The trustee shall sell the property referenced above to Ritter Enterprises of Central Florida, Inc. (the other ½ interest owner) for the total price of $87,500.00, and pursuant to the terms of the attached Commercial Contract. At closing payment to the trustee shall be in the form of cashier's check or wire transfer and payable to Robert Altman, Trustee, and mailed to P.O. Box 922, Palatka, FL 32178-0922. The trustee believes this sale to be in the best interest of the estate. The trustee does not anticipate any major tax consequence to this sale and a trustee's deed will be issued.

4. The trustee reserves the right, without penalty, to withdraw this offer of sale at any time. This sale will not become final until after the expiration of the 21 day objection period set forth above/or a favorable disposition of any objections to the sale. The trustee, until the expiration of the time within which parties may object to the proposed sale, will entertain any higher bids of the purchase of the asset(s) being sold. Any higher bid must be accompanied by a deposit of twenty percent (20%) of the proposed higher purchase price. Any higher bid must be received by the trustee at the address listed below no later than twenty-one (21) days from the date of this notice. Should a higher bid be received, the trustee will conduct a telephone auction between the original purchaser named in this notice and the additional bidder(s) at the earliest reasonable time.

DATE: 2-11-2014

ROBERT ALTMAN, P.A.

*/s/ Robert Altman*

Robert Altman, Trustee
Florida Bar No. 346861
P.O. Box 922
Palatka, FL 32178-0922
(386) 325-4691
(386) 325-9765 Facsimile

**Commercial Contract**
**Florida Realtors®**

1*  1. PARTIES AND PROPERTY: _Ritter Enterprises of Central Florida, Inc., or assigns_ ("Buyer")

2*  agrees to buy and _Robert Altman, Chapter 7 Trustee of the Bankruptcy Estate of Mills M. Brinson, III and Mona G. Brinson_ ("Seller")

3*  agrees to sell the property as: Street Address: _____

4*  _53 South Magnolia Avenue, Ocala, Florida 34471_

5*  Legal Description: _One-Half interest in the following: The S 50.18' of the W 84.78' of Lot 3, Block 55, Old Survey of Ocala, Plat Book E,_

6*  _Pages 1 and 2. Commence 17' W of the SE corenr of Lt 3, Block 55; thence N 58.18', W 17.22', S 50.18' and E 17.22' to the POB, Except 1.20'_

7*  and the following Personal Property: _____

8*  _____

9  (all collectively referred to as the "Property") on the terms and conditions set forth below.

10*  2. PURCHASE PRICE: $ _87,500.00_

11*  (a) Deposit held in escrow by _Advantage Title, LLC_ $ _500.00_
12  ("Escrow Agent") (checks are subject to actual and final collection)
13*  Escrow Agent's address: _230 NE 25th Avenue, Suite 100, Ocala, FL_ Phone: _352-387-3800_

14*  (b) Additional deposit to be made to Escrow Agent within ____ days after Effective Date $ _____

15*  (c) Additional deposit to be made to Escrow Agent within ____ days after Effective Date $ _____

16*  (d) Total financing (see Paragraph 5) $ _87,000.00_

17*  (e) Other _____ $ _____

18  (f) All deposits will be credited to the purchase price at closing. Balance to close, subject
19*  to adjustments and prorations, to be paid with locally drawn cashier's or official bank $ _____
20  check(s) or wire transfer.

21  3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME: Unless this offer is signed by **Seller**
22*  and **Buyer** and an executed copy delivered to all parties on or before _February 14, 2014_, this offer will be
23  withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be 3
24  days from the date the counter offer is delivered. **The "Effective Date" of this Contract is the date on which the**
25  **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer.**
26  Calendar days will be used when computing time periods, except time periods of 5 days or less. Time periods of 5
27  days or less will be computed without including Saturday, Sunday, or national legal holidays. Any time period ending
28  on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next business day. **Time is of the**
29  **essence in this Contract.**

30  4. CLOSING DATE AND LOCATION:

31*  (a) Closing Date: This transaction will be closed on _or before 45 days from accept_ (Closing Date), unless specifically
32  extended by other provisions of this Contract. The Closing Date will prevail over all other time periods including, but
33  not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended on Closing
34  Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after the
35  insurance underwriting suspension is lifted.

36*  Buyer ( ) ( ___ ) and Seller ( ) ( ___ ) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-4   Rev. 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved
User Reg# S-23D8EY330208HN0C-1021
Software and added formatting © 2014 Alta Star Software, all rights reserved. • www.altastar.com • (877) 279-8898

37*     (b) Location: Closing will take place in **Marion** _____ County, Florida. (If left blank, closing
38     will take place in the county where the property is located.) Closing may be conducted by mail or electronic means.

39 **5. THIRD PARTY FINANCING:**

40* **BUYER'S OBLIGATION:** Within **2**___ days (5 days if left blank) after Effective Date, **Buyer** will apply for third party
41* financing in an amount not to exceed **100** % of the purchase price or $ **87,500.00**_____, with a fixed interest rate
42* not to exceed **5.0** % per year with an initial variable interest rate not to exceed ___ %, with points or commitment
43* or loan fees not to exceed ___ % of the principal amount, for a term of **30** years, and amortized over _____
44 years, with additional terms as follows:
45* _____.
46 **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
47* lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within **10** days (45 days if
48 left blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and
49 (iii) close the loan. **Buyer** will keep **Seller** and **Broker** fully informed about loan application status and authorizes the
50 mortgage broker and lender to disclose all such information to **Seller** and **Broker**. **Buyer** will notify **Seller** immediately
51 upon obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and
52* reasonable diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within ___ days (3 days if left
53 blank) deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
54 If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time
55 thereafter. Unless this financing contingency has been waived, this Contract shall remain subject to the
56 satisfaction, by closing, of those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes**
57 **of Paragraph 5 only):** If **Buyer** has used good faith and reasonable diligence but does not obtain Loan
58 Approval by Loan Approval Date and thereafter either party elects to cancel this Contract as set forth above or the
59 lender fails or refuses to close on or before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be
60 returned to **Buyer**, whereupon both parties will be released from all further obligations under this Contract, except for
61 obligations stated herein as surviving the termination of this Contract. If neither party elects to terminate this Contract
62 as set forth above or **Buyer** fails to use good faith or reasonable diligence as set forth above, **Seller** will be entitled to
63 retain the Deposit(s) if the transaction does not close.

64* **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☐ statutory warranty
65* deed ☒ other **Trustee Deed** _____, free of liens, easements and encumbrances of record or
66 known to **Seller**, but subject to property taxes for the year of closing; covenants, restrictions and public utility
67 easements of record; existing zoning and governmental regulations; and (list any other matters to which title will be
68* subject) _____
69* _____;
70 provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
71* Property as _____.

72     (a) **Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
73*     and pay for the title search and closing services. ~~Seller~~ will, at (check one) ☐ Seller's ☒ Buyer's expense and
74*     within **5** days ☒ after Effective Date ☐ or at least ___ days before Closing Date deliver to **Buyer** (check one)
75*         ☒ (i.) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be
76         discharged by **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount
77         of the purchase price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the
78         evidence of title and **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after
79         Effective Date.
80*         ☐ (ii.) an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an
81         existing firm. However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable
82         to the proposed insurer as a base for reissuance of coverage may be used. The prior policy will include copies
83         of all policy exceptions and an update in a format acceptable to **Buyer** from the policy effective date and
84         certified to **Buyer** or **Buyer's** closing agent together with copies of all documents recited in the prior policy and
85         in the update. If such an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of
86         title.

87     (b) **Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
88     of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or

89* Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

CC-4 Rev. 12/10 ©2010 Florida Association of REALTORS® All Rights Reserved

90*     (2) **Buyer** delivers proper written notice and **Seller** cures the defects within ___ days from receipt of the notice
91     ("Curative Period"). If the defects are cured within the Curative Period, closing will occur within 10 days from receipt
92     by **Buyer** of notice of such curing. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect
93     cannot be cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have
94     10 days from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or
95     accept title subject to existing defects and close the transaction without reduction in purchase price.

96   **(c) Survey:** (check applicable provisions below)
97*     ☐ (i.)**Seller** will, within _____ days from Effective Date, deliver to **Buyer** copies of prior surveys, plans,
98     specifications, and engineering documents, if any, and the following documents relevant to this transaction:
99*     _____,
100     prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
101     transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
102     date this Contract is terminated.
103*     ☒ **Buyer** will, at ☐ **Seller's** ☒ **Buyer's** expense and within the time period allowed to deliver and examine title
104     evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
105*     encroachments on the Property or that the improvements encroach on the lands of another, ☐ **Buyer** will
106*     accept the Property with existing encroachments ☐ such encroachments will constitute a title defect to be
107     cured within the Curative Period.

108   **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

109 **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is"
110 condition, ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition.
111 **Seller** makes no warranties other than marketability of title. In the event that the condition of the Property has
112 materially changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and
113 receive a refund of any and all deposits paid, plus interest, if applicable. By accepting the Property "as is", **Buyer**
114 waives all claims against **Seller** for any defects in the Property. (Check **(a)** or **(b)**)

115*   ☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
116     condition.

117*   ☒ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within _15_ days from Effective Date ("Due
118     Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion, for **Buyer's**
119     intended use and development of the Property as specified in Paragraph 6. During the Due Diligence Period,
120     **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which **Buyer** deems necessary
121     to determine to **Buyer's** satisfaction the Property's engineering, architectural, environmental properties; zoning and
122     zoning restrictions; flood zone designation and restrictions; subdivision regulations; soil and grade; availability of
123     access to public roads, water, and other utilities; consistency with local, state and regional growth management and
124     comprehensive land use plans; availability of permits, government approvals and licenses; compliance with
125     American with Disabilities Act; absence of asbestos, soil and ground water contamination; and other inspections
126     that **Buyer** deems appropriate to determine the suitability of the Property for **Buyer's** intended use and
127     development. **Buyer** will deliver written notice to **Seller** prior to the expiration of the Due Diligence Period of
128     **Buyer's** determination of whether or not the Property is acceptable. **Buyer's** failure to comply with this notice
129     requirement will constitute acceptance of the Property in its present "as is" condition. **Seller** grants to **Buyer**, its
130     agents, contractors and assigns, the right to enter the Property at any time during the Due Diligence Period for the
131     purpose of conducting Inspections; provided, however, that **Buyer**, its agents, contractors and assigns enter the
132     Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from losses,
133     damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from liability to any
134     person, arising from the conduct of any and all inspections or any work authorized by **Buyer**. **Buyer** will not engage
135     in any activity that could result in a mechanic's lien being filed against the Property without **Seller's** prior written
136     consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the Property resulting
137     from the Inspections and return the Property to the condition it was in prior to conduct of the Inspections, and
138     (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a result of the
139     Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that **Buyer's**
140     deposit will be immediately returned to **Buyer** and the Contract terminated.

141   **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the

142* **Buyer** (signature) (____) and **Seller** (signature) (____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

CC-4 Rev. 12/10 ©2010 Florida Association of REALTORS® All Rights Reserved

143   parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
144   to ensure that all Property is on the premises.

145 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
146   business conducted on the Property in the manner operated prior to Contract and will take no action that would
147   adversely impact the Property, tenants, lenders or business, if any. Any changes, such as renting vacant space, that
148*  materially affect the Property or **Buyer's** intended use of the Property will be permitted ☐ only with **Buyer's** consent
149*  ☐ without **Buyer's** consent.

150 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
151   the norms where the Property is located.

152   **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
153   closing. ~~Seller will provide keys, remote controls, and any security/access codes necessary to operate all locks,~~
154   ~~mailboxes, and security systems.~~

155   **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
156   statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
157   recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
158   prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

159   **(c) Documents: Seller** will provide the deed; *Trustee's* ~~bill of sale; mechanic's lien affidavit; originals of those assignable~~
160   ~~service and maintenance contracts that will be assumed by Buyer after the Closing Date and letters to each~~
161   ~~service contractor from Seller advising each of them of the sale of the Property and, if applicable, the transfer of its~~
162   ~~contract, and any assignable warranties or guarantees received or held by Seller from any manufacturer,~~
163   ~~contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium~~
164   ~~documents, if applicable; assignments of leases, updated rent roll, tenant and lender estoppels letters; tenant~~
165   ~~subordination, non-disturbance and attornment agreements (SNDAs) required by the Buyer or Buyer's lender;~~
166   ~~assignments of permits and licenses; corrective instruments; and letters notifying tenants of the change in~~
167   ~~ownership/rental agent. If any tenant refuses to execute an estoppels letter, Seller will certify that information~~
168   ~~regarding the tenant's lease is correct.~~ If **Seller** is an entity, **Seller** will deliver a resolution of its Board of Directors
169   authorizing the sale and delivery of the deed and certification by the appropriate party certifying the resolution and
170   setting forth facts showing the conveyance conforms to the requirements of local law. **Seller** will transfer security
171   deposits to **Buyer**. **Buyer** will provide the closing statement, mortgages and notes, security agreements, and
172   financing statements.

173   **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
174   payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
175   premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
176   amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
177   allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
178   of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

179   **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
180   will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
181   pay all installments due and payable on or before the Closing Date, with any installment for any period extending
182   beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
183   Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
184   Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
185   completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
186   estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
187   does not apply to condominium association special assessments.

188   **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
189   **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
190   complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply
191   with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or

192* Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

CC-4  Rev. 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved

193 Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
194 withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
195 requirement.

196 **10. ESCROW AGENT:** **Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to
197 receive, deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance
198 with the terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of
199 escrowed items to **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross
200 negligence. If Agent has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option,
201 (a) hold the escrowed items until the parties mutually agree to its disbursement or until a court of competent
202 jurisdiction or arbitrator determines the rights of the parties or (b) deposit the escrowed items with the clerk of
203 the court having jurisdiction over the matter and file an action in interpleader. Upon notifying the parties of such action,
204 Agent will be released from all liability except for the duty to account for items previously delivered out of escrow. If
205 Agent is a licensed real estate broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent
206 interpleads the escrowed items or is made a party because of acting as Agent hereunder, Agent will recover
207 reasonable attorney's fees and costs incurred, with these amounts to be paid from and out of the escrowed items and
208 charged and awarded as court costs in favor of the prevailing party.

209 **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
210 default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
211 complying party specifying the non-compliance. The non-complying party will have ___ days (5 days if left blank) after
212 delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

213 **12. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
214 not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
215 will be returned in accordance with applicable Florida Laws and regulations.

216 **13. DEFAULT:**

217 (a) In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
218 the title marketable after diligent effort, **Buyer** may either (1) receive a refund of **Buyer's** deposit(s) or ~~(2) seek~~
219 ~~specific performance.~~ If **Buyer** elects a deposit refund, ~~Seller will be liable to Broker for the full amount of the~~
220 ~~brokerage fee.~~

221 (b) In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1) retain
222 all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
223 execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
224 specific performance. If **Seller** retains the deposit, **Seller** will pay the Brokers named in Paragraph 20 fifty percent
225 of all forfeited deposits retained by **Seller** (to be split equally among the Brokers) up to the full amount of the
226 brokerage fee. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1) terminate
227 the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without waiving
228 any remedy for **Buyer's** default.

229 **14. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
230 prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and **Broker**, will be awarded reasonable
231 attorneys' fees, costs, and expenses.

232 **15. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
233 electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
234 document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
235 representing a party will be as effective as if given by or delivered to that party.

236 **16. DISCLOSURES:**

237 (a) **Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales
238 Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial
239 real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net

240* Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

CC-4 Rev. 12/10 ©2010 Florida Association of REALTORS® All Rights Reserved

241  proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any
242  interest in real property. This lien right cannot be waived before the commission is earned.

243  **(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special
244  assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such
245  liens, if any, shall be paid as set forth in Paragraph 9(e).

246  **(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in
247  sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
248  exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon
249  and radon testing may be obtained from your county public health unit.

250  **(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by
251  Section 553.996, Florida Statutes.

252 **17. RISK OF LOSS:**

253  (a) If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear
254  the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**.
255  Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller**
256  will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any
257  insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such
258  proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the
259  **Buyer**.

260  (b) If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the
261  right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this
262  Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of
263  purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at
264  closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with
265  and assist **Buyer** in collecting any such award.

266* **18. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is
267* not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment
268  agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer," "Seller"** and **"Broker"** may be singular or
269  plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns
270  (if assignment is permitted).

271 **19. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**.
272  Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound.
273  Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated
274  electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or
275  typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract
276  is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be
277  construed under Florida law and will not be recorded in any public records.

278 **20. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to,
279  a licensed real estate Broker other than:

280* **(a) Seller's Broker:** _N/A_____,
281                          (Company Name)                                    (Licensee)
282* _____,
283                          (Address, Telephone, Fax, E-mail)
284* who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated
285* by ☐ Seller ☐ Buyer ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

286* _____

287* Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-4 Rev. 12/10 ©2010 Florida Association of REALTORS® All Rights Reserved

288* (b) **Buyer's Broker:** _N/A_____,
289            (Company Name)                              (Licensee)
290* _____,
291               (Address, Telephone, Fax, E-mail)
292* who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated
293* by ☐ Seller's Broker ☐ Seller ☐ Buyer ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
294* _____
295 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
296 inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
297 indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
298 reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
299 inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
300 Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
301 services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
302 expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

303 **21. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
304 this Contract):
305*  ☐ Arbitration              ☐ Seller Warranty                  ☐ Existing Mortgage
306*  ☐ Section 1031 Exchange    ☐ Coastal Construction Control Line ☐ Buyer's Attorney Approval
307*  ☐ Property Inspection and Repair ☐ Flood Area Hazard Zone      ☐ Seller's Attorney Approval
308*  ☐ Seller Representations    ☐ Seller Financing                 ☐ Other _____

309 **22. ADDITIONAL TERMS:**

310* _Seller and Buyer agree to use the services of Advantage Title, LLC for the purpose of settlement and the_

311* _issuance of an owner's title insurance policy._

312* _____

313* _*For purposes of this Contract, the Effective Date shall be the end of the required time period from the_

314* _Notice of Intention to Sell filed with the Bankruptcy Court, assuming no objections are filed. If objections_

315* _are filed, the Effective Date shall be extended until any objections are resolved._

316* _____

317* _____

318* _____

319* _____

320* _____

321 THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE
322 ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL
323 FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE
324 PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE
325 EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR
326 REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER
327 ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL
328 REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER
329 REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF
330 THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS
331 AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE
332 AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.

333* Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

CC-4  Rev. 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved

334 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
335 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
336 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
337 to do so.

338* _[signature]_      Date: __2/5/14__
339 (Signature of **Buyer**)

340* __Scott Ritter__      Tax ID No: __59-3753943__
341 (Typed or Printed Name of **Buyer**)

342* Title: __President__      Telephone: __352-427-1142__

343* _____      Date: _____
344 (Signature of **Buyer**)

345* _____      Tax ID No: _____
346 (Typed or Printed Name of **Buyer**)

347* Title: _____      Telephone: _____

348* **Buyer's** Address for purpose of notice: _____

349* Facsimile: _____      Email: _____

350* _[signature]_      Date: __2-11-2014__
351 (Signature of **Seller**)

352* __Doreen Abshire, Trustee__      Tax ID No: __61-6486582__
353 (Typed or Printed Name of **Seller**)

354* Title: __Chapter 7 Trustee__      Telephone: __386-325-4691__

355* _____      Date: _____
356 (Signature of **Seller**)

357* _____      Tax ID No: _____
358 (Typed or Printed Name of **Seller**)

359* Title: _____      Telephone: _____

360* **Seller's** Address for purpose of notice: _____

361* Facsimile: _____      Email: _____

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

362* Buyer (___) and Seller (___) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-4 Rev. 12/10 ©2010 Florida Association of REALTORS® All Rights Reserved